**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| WILLIAM COOPER, | : | |
| | : | Civil Action No. 04-5055 (SRC) |
| Petitioner, | : | |
| | : | |
| v. | : | **O P I N I O N** |
| | : | |
| ROY L. HENDRICKS, et al., | : | |
| | : | |
| Respondents. | : | |

**APPEARANCES:**

William Cooper, Pro Se
#281370/523916
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625

Debra A. Owens
Division of Criminal Justice
P.O. Box 086
Trenton, NJ 08625
Attorney for Respondents

**CHESLER, District Judge**

　　　Petitioner, William Cooper, filed the within petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  Respondents have filed an Answer and the state court record.  The Court has considered all submissions.  For the reasons set forth below, the Petition will be denied.

**BACKGROUND**

1.   Factual Background

The facts of this case were recounted below and this Court, affording the state court's factual determinations the appropriate deference, see 28 U.S.C. § 2254(e)(1),[1] will simply reproduce the Superior Court of New Jersey, Appellate Division's ("Appellate Division") factual recitation:

> On May 6, 1994, defendant was working as a carpenter's helper to Dennis Bartley, the lead carpenter on a job rehabilitating a burned-out apartment building in Atlantic City.  John Ewert was the construction manager.  He would go to the site periodically to check on the work.  On the morning of May 6, Ewert delivered paychecks to Bartley ($360) and to defendant ($87). While Ewert was there, defendant was breaking up some concrete with a sledgehammer.  Around mid-day, both Bartley and defendant left the site to cash their respective checks.  Defendant also visited the company's payroll office to resolve a dispute concerning the amount of his check.  He saw Ewert and reported he would not return to work that day because he had to look for a new apartment.  Later, defendant and his live-in girlfriend, Angela Brown, visited several apartments.  At some point they returned home and defendant told her he was going back to work.
>
> According to Catherine Kelly, an employee for the construction company, defendant returned to the office about 4:30 p.m.  He pulled out a thick roll of cash and offered to pay back the $100 that Kelly had advanced him earlier that day.  Defendant's step-uncle, Joseph Hargrove, saw defendant leaving the office around 5:00

_____

[1]   Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

p.m.  Later that night, Brown heard defendant run water
in the bathroom for two or three hours.

The next morning Ewert inspected the job site and
discovered Bartley's body covered with blood.  Ewert
noticed a sledgehammer, a power drill, and a power saw
nearby and that Bartley's pants pockets had been turned
inside out.

The State's forensic evidence showed that Bartley
had suffered multiple contusions and lacerations of the
scalp and neck, a fractured vertebrae, and a laceration
of the back.  The skull fracture was consistent with
having been caused by a sledgehammer.  A long
laceration on the face and neck was consistent with
having been made by a circular power saw, and two holes
in the victim's neck were consistent with having been
made by a power drill.  The medical examiner estimated
the victim had been dead for sixteen to twenty-four
hours prior to his examination of the body around 1
p.m. on May 7.

(Respondents' Appendix, "Ra" 3, at pp. 3-4).

The Appellate Division further noted that Petitioner

consented to a search of his apartment, where police found

bloodstained boots and jeans.  Petitioner's girlfriend also told

police that Petitioner had returned to work in the afternoon,

contrary to Petitioner's assertion that he had not returned to

work the day of the incident.  After being advised his Miranda

rights,[2] Petitioner denied involvement in the crime.  DNA

analysis showed that the blood on Petitioner's jeans and boots

was Bartley's blood.  Other evidence included a bloody footprint

on the back of Bartley's sweatshirt, which was similar to the

tread pattern on Petitioner's boots.  Petitioner did not testify

---

[2]  See Miranda v. Arizona, 381 U.S. 436 (1966).

3

at trial, and presented only one alibi witness.  (Ra3 at pp. 4-5).

2.  <u>Procedural History</u>

On December 16, 1994, an Atlantic County Grand Jury indicted the petitioner on nine counts, including: murder, contrary to <u>N.J.S.A.</u> 2C:11-3(a)(1) or (2) (counts one); robbery, contrary to <u>N.J.S.A.</u> 2C:15-1 (count two); possession of weapons with an unlawful purpose, contrary to <u>N.J.S.A.</u> 2C:39-4(d) (counts three, four, and five); unlawful possession of weapons, contrary to <u>N.J.S.A.</u> 2C:39-5d (counts six, seven, eight); and possession of weapons by a previously convicted person, contrary to <u>N.J.S.A.</u> 2C:39-7b (count nine).

Petitioner was tried by jury for nine days, spanning from March 25th through April 9th, 1996, in the Superior Court of New Jersey, Law Division, Atlantic County ("Law Division").[3]  The jury found the petitioner guilty on counts one through eight of the indictment.  On May 23, 1996, Petitioner was sentenced to an aggregate sentence of life plus fifteen years imprisonment with 35 years of parole ineligibility.

Petitioner appealed his conviction and sentence.  In a <u>per curiam</u> decision dated April 9, 1999, the Appellate Division affirmed the conviction, but remanded for reconsideration of the

---

[3]  Petitioner was tried on counts one through eight.  Count nine was severed prior to trial.

sentence.  (Ra3; <u>State v. Cooper</u>, A-6890-95T4 (Apr. 9, 1999)).
On July 8, 1999, Petitioner's petition for certification was
denied by the New Jersey Supreme Court.  (Ra6; <u>State v. Cooper</u>,
161 N.J. 331 (1999)).

In the meantime, on May 5, 1999, Petitioner was resentenced
pursuant to the directive of the Appellate Division to an
aggregate sentence of life with a 30-year parole disqualifier,
plus 12 years.  The Appellate Division affirmed the new sentence
by order dated January 12, 2000.

Petitioner filed a motion for Post-Conviction Relief ("PCR")
in the trial court on or about September 9, 1999.  On March 16,
2000, the petition was denied in an oral opinion without an
evidentiary hearing.  The petitioner appealed the denial, and on
May 14, 2003, the denial was affirmed by the Appellate Division.
(Ra10; <u>State v. Cooper</u>, A-5423-99T4 (May 14, 2003)).
Petitioner's petition for certification to the New Jersey Supreme
Court was denied on October 16, 2003.  (Ra 13; <u>State v. Cooper</u>,
178 N.J. 32 (2003)).

The instant petition was received and filed on October 14,
2004.  On November 24, 2004, Petitioner was advised of his rights
pursuant to <u>Mason v. Meyers</u>, 208 F.3d 414 (3d Cir. 2000).  On
April 8, 2005 and April 13, 2005, Respondents filed an Answer and
the state court record, respectively.

### PETITIONER'S CLAIMS

Petitioner asserts the following arguments for habeas relief:

1. Ineffective assistance of trial counsel:
   A. By not interviewing alibi witnesses before trial (Ground 1);
   B. By failure of counsel to establish to court that state's inference of pre-trial silence and recent fabrication on the part of petitioner's alibi witness did not exist (Ground 2);
   C. By failure of counsel to preserve his right for a jury instruction (Ground 3);
   D. By counsel's erroneous and insufficient advice not to testify (Ground 11).

2. Ineffective assistance of appellate counsel for omitting meritorious constitutional issues (Grounds 4 and 7).

3. Prosecutorial misconduct by unreasonable attack on alibi witness that denied Petitioner due process (Ground 5).

4. Trial court error in failing to give jury instruction regarding alibi witness's failure to provide exculpatory information (Ground 6).

5. Denial of impartial jury drawn from cross-section of community by prosecutor's unfair use of peremptory challenge to exclude black jurors (Ground 8).

6. State court's denial of Petitioner's ineffective assistance claim was contrary to clearly established federal law (Ground 9).

7. The PCR court's denial of relief was in error (Ground 10).

See Petition for Writ of Habeas Corpus, ¶ 12 and "Supporting Facts."

6

Petitioner has raised the instant claims before the New Jersey state courts.  Therefore, they are properly before this Court for a decision on the merits.  <u>See</u> 28 U.S.C. § 2254(b)(1). To the extent that any of the claims are not exhausted, this Court exercises its discretion to decide them on the merits, in accordance with 28 U.S.C. § 2254(b)(2).

## **DISCUSSION**

A.   **Standards Governing Petitioner's Claims.**

Section 2254 of Title 28, United States Code, provides that the district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), federal courts in habeas corpus cases must give considerable deference to determinations of the state trial and appellate courts.  <u>See</u> <u>Duncan v. Morton</u>, 256 F.3d 189, 196 (3d Cir.), <u>cert.</u> <u>denied</u> 534 U.S. 919 (2001); <u>Dickerson v. Vaughn</u>, 90 F.3d 87, 90 (3d Cir. 1996)(citing <u>Parke v. Raley</u>, 506 U.S. 20, 36 (1992)).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus.  The statute reads as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment

7

of a State court shall not be granted with respect to
any claim that was adjudicated on the merits in State
court proceedings unless the adjudication of the claim-

> (1) resulted in a decision that was contrary
> to, or involved an unreasonable application
> of, clearly established Federal law, as
> determined by the Supreme Court of the United
> States; or

> (2) resulted in a decision that was based on
> an unreasonable determination of the facts in
> light of the evidence presented in the State
> court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the
Supreme Court explained the application of § 2254(d)(1).  The
Court analyzed subsection 1 as two clauses:  the "contrary to"
clause and the "unreasonable application" clause.  The Court held
that under the "contrary to" clause, "a federal court may grant
the writ if the state court arrives at a conclusion opposite to
that reached by [the Supreme] Court on a question of law or if
the state court decides a case differently than [the Supreme]
Court has on a set of materially indistinguishable facts."  Id.
A federal court may grant the writ under the "unreasonable
application" clause, if "the state court identifies the correct
governing legal principle from [the Supreme] Court's decisions
but unreasonably applies that principle to the facts of the
prisoner's case."  Id. at 413.  Habeas relief may not be granted
under the "unreasonable application" clause unless a state
court's application of clearly established federal law was

8

objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief.  See id. at 411; see also Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001); Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir.), cert. denied, Matteo v. Brennan, 528 U.S. 824 (1999).  Thus, the federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent.  See Werts, 228 F.3d at 197; see also Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

With regard to 28 U.S.C. § 2254(d)(2), a federal court must confine its examination to evidence in the record.  See Abu-Jamal v. Horn, 2001 WL 1609690, at *12 (E.D. Pa. December 18, 2001). In addition, the state court record should be reviewed to assess the reasonableness of the state court's factual determinations. See id.  Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court."  Id.; see also 28 U.S.C. § 2254(e)(1).  The Court of Appeals for the Third Circuit has ruled that this presumption of correctness can be overcome only by clear and convincing evidence.  See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir. 2001)(citing 28 U.S.C. § 2254(e)(1)).  "A finding that is well-supported and subject to the presumption of correctness is not

unreasonable." Abu-Jamal, 2001 WL 1609690 at *12 (citing Duncan, 156 F.3d at 198).

Furthermore, federal habeas courts ordinarily refrain from revisiting credibility determinations as "it would be wholly inappropriate for a federal court to repastinate soil already thoroughly plowed and delve into the veracity of the witnesses on habeas review." Sanna v. Dipaolo, 265 F.3d 1, 10 (1st Cir. 2001). A habeas petitioner therefore "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

**B.  Petitioner's Claims Regarding Ineffective Counsel**

    1.  Petitioner's Claims

Petitioner makes various claims concerning his counsel's ineffectiveness at trial. First, Petitioner claims that his

attorney was ineffective for failing to call an unidentified store clerk as an alibi witness and failing to investigate whether the store had a surveillance camera that would show Petitioner's presence at the store to further support his alibi. Next, he argues that counsel failed to interview an alibi witness before trial. Petitioner also argues that his girlfriend, Ms. Brown, who was testifying for the State, would have told counsel that Petitioner normally spent a lot of time in the bathroom.

Further, Petitioner argues that counsel was ineffective for failing to elicit at a hearing that his alibi witness had no exculpatory information. Instead, the alibi witness's testimony was impeached. Also, defense counsel had requested a specific charge regarding the alibi witness's failure to come forward with exculpatory information. The trial judge asked counsel to put the charge in writing, and it would be considered. However, counsel never submitted the charge.

Finally, Petitioner argues that counsel was ineffective for advising him not to testify, and that he did not know that the decision not to testify was his own, and not counsel's to make.

    2.   <u>Analysis</u>

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court held that in order to establish that trial counsel is ineffective, the petitioner must show that "counsel's performance was deficient," in that "counsel made errors so

serious that counsel was not functioning as 'counsel' guaranteed . . . by the Sixth Amendment," and "that the deficient performance prejudiced the defense." Id. at 687.  In order to establish prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." State v. Fritz, 105 N.J. 42, 60-61 (1997)(quoting Strickland, 466 U.S. at 694).  "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688.  The Supreme Court further explained:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id. at 689 (citations omitted); see also Virgin Islands v. Wheatherwax, 77 F.3d 1425, 1431 (3d Cir. 1996),  cert. denied 519 U.S. 1020 (1996).

Petitioner raised claims of ineffective assistance of counsel during his PCR motion.  The trial court applied the correct <u>Strickland</u> standard and found that neither counsel's performance was deficient, nor that the results of the proceedings would have been different had counsel performed differently.  (<u>See</u> Transcript of Post-Conviction Relief hearing, dated March 16, 2000).

     The Appellate Division analyzed Petitioner's ineffective assistance of counsel claims on appeal of the denial of his PCR motion.  The Appellate Division found that Petitioner's arguments were without merit.  However, the court commented on the ineffective assistance of counsel claims.  Also citing the correct <u>Strickland</u> standard, the court found:

> Applying these principles here, we are not persuaded that defendant was denied the effective assistance of counsel.  Defendant contends his trial counsel was ineffective for advising him not to testify and for failing to interview a witness.  With regard to trial counsel's advice not to testify, the record amply demonstrates that defendant voluntarily made that decision and the trial court confirmed it on the record.  "The decision whether to testify, although ultimately defendant's, is an important strategical choice, made by defendant in consultation with counsel."  We will not second guess the final decision a defendant makes in conjunction with the advice of his attorney.  With regard to the assertion that counsel refused to interview an alibi witness, the record is devoid of any information concerning the purported witness or what the witness would have said. ...
>                     \*\*\*
> Defendant contends that his trial counsel was ineffective because he failed to submit a suggested form of a charge that the alibi witness had no civic or moral duty to come forward with exculpatory evidence

prior to trial.  To be sure, this argument could have
been raised on direct appeal and is therefore barred.
Moreover, even if we were to consider this argument and
conclude that counsel was ineffective for failing to
present the charge to the court for submission to the
jury, we find no sound basis to conclude that, but for
counsel's deficiencies, the result of the trial would
have been different.  The trial court did instruct the
jury on assessing the credibility of the witnesses and
their testimony, including the alibi testimony.
Further, the testimony of the alibi witness did not
account for defendant's whereabouts during the entire
time in which the murder could have been committed.
The evidence against defendant was overwhelming,
including the DNA and blood spatter evidence confirming
that the blood stains on defendant's work clothes were
from the victim.  Consequently, trial counsel's conduct
in not presenting the charge to the court and appellate
counsel's conduct in not raising this argument on
direct appeal did not affect the outcome of the trial.

(Ra10 at pp. 6-8)(internal citations omitted).

This Court has reviewed the record and finds also that

Petitioner's claims are without merit.  Petitioner has failed to

satisfy the first prong of <u>Strickland</u>.  For example, with regard

to Petitioner's claim that counsel should have investigated the

store attendant as an alibi witness, as the Appellate Division

pointed out, the record is "devoid of any information concerning

the purported witness or what the witness would have said."

(Ra10 at pp. 6-7).  Petitioner's claim that his girlfriend should

have been called as an alibi witness would not have changed the

result of his trial either, since his girlfriend testified that

she was guessing as to her references to times.  Further, even if

she had testified as to how long Petitioner usually spent in the

14

bathroom, this would not have advanced Petitioner's alibi defense.

Additionally, it is clear from the record that Petitioner was well aware of his right to testify and that the decision not to testify was made knowingly and intelligently.  Counsel stated on the record that he discussed the options with Petitioner, and Petitioner stated on the record to the judge that he understood his rights, and that he chose not to testify.  (See Transcript dated April 3, 1996 at pp. 26-27).

However, even had Petitioner satisfied the first prong of Strickland, which this Court does not find, he has not satisfied the second prong.  The evidence against Petitioner, including the DNA evidence, as well as various witness's testimony was weighed by the jury to find Petitioner guilty.  Therefore, even if counsel performed deficiently, there is not a "reasonably probability" that the result of the proceedings would have been different, had counsel acted as Petitioner wished.

Additionally, the trial court and the Appellate Division cited the appropriate Strickland standard, and reasonably determined the facts.  As such, Petitioner has not demonstrated that the actions of the state courts, which applied the proper federal law, "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

15

States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Accordingly, these grounds for a writ of habeas corpus will be denied.

**C.    Claims Regarding Appellate Counsel**

Petitioner argues in Ground 4 that appellate counsel was ineffective for failing to raise on appeal the fact that the State should not have been able to cross-examine his alibi witness on the issue of pre-trial silence.  In Ground 7 he argues that appellate counsel should have raised the issue of the State's failure to preserve evidence on direct appeal, specifically, a hair found on the victim that was believed to have belonged to the victim.

The Supreme Court has held that the Due Process Clause of the Fourteenth Amendment guarantees a defendant the effective assistance of counsel on a first direct appeal as of right.  See Evitts v. Lucey, 469 U.S. 387 (1985).  The Strickland standard for effective assistance of counsel applies to appellate counsel. See Lewis v. Johnson, 359 F.3d 646, 656 (3d Cir. 2004). Appellate counsel does not have a duty to advance every nonfrivolous argument that could be made, see Jones v. Barnes, 463 U.S. 745, 754 (1983), but a petitioner may establish that appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while

16

pursuing issues that were clearly and significantly weaker."
Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

In this case, the Appellate Division examined these claims
on appeal from the denial of the PCR motion.  Although noting
that the claim regarding the preservation of evidence was not
raised on direct appeal, the Appellate Division nevertheless
found that:

> . . . even if we address defendant's assertion, unless
> defendant could show bad faith on the part of the
> police, the failure to preserve the hairs was not a
> denial of due process of law.  Further, the evidence
> must be material and favorable to the defense.  Here,
> there is no evidence to suggest bad faith.  The hairs
> were believed to belong to the victim rather than a
> third party.  Moreover, the failure to test the hairs
> gave defendant the opportunity to argue that the hairs
> were not his or the victim's but belonged to the
> killer.  Under these circumstances, the failure to
> preserve the hairs did not deprive defendant of a fair
> trial.

(Ra10 at p. 9).  As stated, supra, at page 14 of this Opinion,
the Appellate Division also found that appellate counsel was not
ineffective for failing to raise the argument concerning the
alibi testimony on direct appeal.  (Ra10 at p. 8).

Thus, although Petitioner argues that appellate counsel
should have raised these issues on direct appeal, the arguments
were placed before the Appellate Division on denial of the PCR
motion, and were considered and rejected.  Petitioner is not
entitled to habeas relief on these grounds.

**D.   <u>Prosecutorial Misconduct Claim</u>**

Petitioner argues that the prosecutor committed misconduct when he stated that Petitioner's alibi witness's statement must be recent fabrication since the witness did not give his statement to anyone until 18 months after the murder.  Petitioner argues that this is factually incorrect, and that it was misconduct for the prosecutor to impeach the witness by using this incorrect information.

The prosecutor questioned the witness on why he did not give a statement until over a year after the incident concerning the alibi information.  According to the record, the alibi witness testified that he was with Petitioner at 4:00 p.m. and sometime thereafter.  He also testified that he thought the crime took place after lunch, which he stated on redirect to mean about 12:30 or 1:00 p.m.  Therefore, he stated on cross-examination that he "didn't think my times meant that much."  (<u>See</u> Trial Transcript dated 4/3/96, at pp. 38, 45).

Habeas review of a claim based on prosecutorial misconduct is limited to determining whether the conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974).  "The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." <u>Smith v. Phillips</u>, 455

U.S. 209, 219 (1982).  If it does not infect the entire trial, misconduct alone is not enough to warrant a new trial.  Id. at 220.  "A criminal conviction is not to be lightly overturned on the basis of a prosecutor 's comments [or conduct] standing alone, for the statements or conduct must be viewed in context." United States v. Young, 470 U.S. 1, 11 (1985).

However, the U.S. Supreme Court has recognized the obligation of a prosecutor to conduct a criminal prosecution with propriety and fairness.

> He may prosecute with earnestness and vigor – indeed,
> he should do so.  But, while he may strike hard blows,
> he is not at liberty to strike foul ones.  It is as
> much his duty to refrain from improper methods
> calculated to produce a wrongful conviction as it is to
> use every legitimate means to bring about a just one.
> ...  Consequently, improper suggestions, insinuations,
> and, especially, assertions of personal knowledge are
> apt to carry much weight against the accused when they
> should properly carry none.

Berger v. United States, 295 U.S. 78, 88 (1935).

"Supreme Court precedent counsels that the reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant."  Moore v. Morton, 255 F.3d 95, 107 (3d Cir. 2001).

In the instant case, this Court finds that there was nothing improper about the prosecutor's actions in questioning the alibi witness.  The concerns of Petitioner that the alleged misconduct

19

by the prosecutor would sway the jury are unfounded, as
Petitioner's attorney had the opportunity to redirect the
testimony of the witness, and attempted to clarify for the jury
why the witness did not immediately give a statement regarding
the alibi.  Further, even if the prosecutor had acted improperly,
in light of the entire trial and the quantum of evidence against
the Petitioner, there was no constitutional violation, and
nothing in the record that warrants granting Petitioner habeas
relief on this claim.  The credibility of the witness was for the
jury to weigh.  The testimony of the alibi witness did not
account for Petitioner's whereabouts during the entire time in
which the murder could have taken place.  DNA and blood spatter
evidence confirmed that the blood stains on Petitioner's clothes
were that of the victim's.  Therefore, a review of the
prosecutor's actions do not support granting habeas relief to
Petitioner, and this claim will be denied.

**E.   <u>Claim Regarding Jury Instructions</u>**

Petitioner argues that the trial court erred by failing to
give a jury instruction that the alibi witness had no moral or
civic duty to come forward with exculpatory information.

However, it is well-established that "a state court's
misapplication of its own law does not generally raise a
constitutional claim.  The federal courts have no supervisory
authority over state judicial proceedings and may intervene only

20

to correct wrongs of constitutional dimension." Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997)(citations omitted), cert. denied, 522 U.S. 1109 (1998).

Assuming, arguendo, that the trial judge did err under state law in failing to give the charge, which this Court does not hold, a state's misapplication of its own law may constitute a violation of due process only in "rare" cases. See id. ("when that misapplication has the effect of depriving a person of life, liberty, or property without due process of law in violation of the Fourteenth Amendment, the resulting federal constitutional error can be corrected by a federal habeas court").

In the instant case, this Court finds that Petitioner's case is not the "rare" instance where trial court rulings have violated Petitioner's right to due process. A review of the whole record demonstrates that the trial process was fundamentally fair. Thus, the Court finds that the testimony presented at trial and considered by the jury was sufficient to render Petitioner's conviction a valid conviction, and that he was not deprived of due process due to the lack of this jury charge.

Additionally, the Court notes that challenges to jury instructions solely as in error under state law do not state a claim cognizable in federal habeas corpus proceedings. See Engle v. Isaac, 456 U.S. 107 (1982); Zettlemoyer v. Fulcomer, 923 F.2d

21

284, 309 (3d Cir.), <u>cert.</u> <u>denied</u>, 502 U.S. 902 (1991); <u>Grecco v.</u>
<u>O'Lone</u>, 661 F. Supp. 408, 412 (D.N.J. 1987)(Thompson,
J.)("Questions concerning instructions are normally matters of
state law and are not cognizable in federal habeas corpus
review.").  Accordingly, this ground for a writ of habeas corpus
will be denied.

## F.   <u>Claim Regarding Jury Selection</u>

Petitioner claims that the prosecutor improperly used
peremptory challenges to exclude black jurors from the jury, in
violation of his right to equal protection and to a trial by an
impartial jury.

In this case, Petitioner is African-American and the victim
was not.  According to the Appellate Division opinion:

> The State represents, without contradiction by
> defendant, there were a total of six African-American
> jurors on the original panel of prospective jurors; two
> were excused by the trial judge for cause and three
> were excused by the prosecutor's peremptory challenges.
> The sixth juror served on the final, fifteen-member
> jury.  Thus, the prosecutor used three peremptory
> challenges to exclude three of the six potential
> African-American jurors.

(Ra3 at p. 6).

The first African-American juror on which a peremptory
challenge was utilized was a woman who stated that she would have
a job conflict.  The judge refused to excuse her for cause.  The
prosecutor used a peremptory challenge stating that her mind

would be on work instead of on the trial, and that she had a very unhappy look upon her face.

The second African-American juror was peremptorily excused because the juror worked for the same employer as a witness in one of the prosecutor's other cases.  The prosecutor stated that she was concerned that the juror would know through working with the witness that she is the prosecutor on the co-worker's case. The trial judge was satisfied.

The third African-American juror excused was done so because the juror looked exactly like a person whom the prosecutor had previously prosecuted successfully on drug charges, and shared the same last name.  The prosecutor was concerned that the juror was related.  The prosecutor did not investigate whether there was a true familial relationship, and the trial judge expressed concern, however, he accepted the prosecutor's reasoning and let the challenge stand.

The Supreme Court set out a three-part test to determine whether a peremptory challenge is unconstitutionally based on race in Batson v. Kentucky,476 U.S. 79 (1986).  First, a defendant must make out a prima facie case of purposeful discrimination "by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose."  Id. at 93-94.  Second, once the defendant makes his initial showing, the burden shifts to the prosecution to adequately explain the

racial exclusion by providing race-neutral justifications.  Id.;
see also Johnson v. California, 125 S. Ct. 2410, 2416 (2005).
Third, if a race-neutral justification is provided, the trial
court must determine whether the defendant has proved purposeful
racial discrimination.  Johnson, 125 S. Ct. at 2416.

"A determination that a petitioner has shown intentional
discrimination is a factual finding that we may not upset unless
it is shown to be clearly erroneous."  Wilson v. Beard, 426 F.3d
653, 668 (3d Cir. 2005)(citing Miller-El v. Cocknell, 537 U.S.
322, 340 (2003)).  The United States Supreme Court has stated:

> In the context of direct review, therefore, we have
> noted that "the trial court's decision on the ultimate
> question of discriminatory intent represents a finding
> of fact of the sort accorded great deference on appeal"
> and will not be overturned unless clearly erroneous.  A
> federal court's collateral review of a state-court
> decision must be consistent with the respect due state
> courts in our federal system.  Where 28 U.S.C. § 2254
> applies, our habeas jurisprudence embodies this
> deference.  Factual determinations by state courts are
> presumed correct absent clear and convincing evidence
> to the contrary, § 2254(e)(1), and a decision
> adjudicated on the merits in a state court and based on
> a factual determination will not be overturned on
> factual grounds unless objectively unreasonable in
> light of the evidence presented in the state-court
> proceeding.

Miller-El, 537 U.S. at 340 (internal citations omitted).

This claim was examined at length on direct appeal.  Citing

<u>Batson</u>, and discussing the New Jersey state law case <u>State v.</u>
<u>Gilmore</u>,[4] the Appellate Division found:

> On the first day of trial defense counsel
> reiterated his objections concerning the prosecutor's
> removal of three African-American jurors.  The trial
> judge accepted the prosecutor's reasons as being
> genuine, finding there was no pattern on the part of
> the prosecutor to eliminate African-Americans from the
> jury.
>
> Although the trial judge did not expressly decide
> whether defendant had shown the requisite <u>prima</u> <u>facie</u>
> case as to each of the three African-American jurors
> excused, by asking the prosecutor for her reasons, he
> implicitly acknowledged that defendant had made a <u>prima</u>
> <u>facie</u> case.  More importantly, the trial judge accepted
> the prosecutor's reasons for excusing each of the
> jurors.  The trial judge's decision to accept each of
> the prosecutor's explanation for exercising the
> peremptory challenge is entitled to great deference.
> We find no justifiable reason to second guess the trial
> judge's acceptance of the reasons advanced by the
> prosecutor.

(Ra3 at pp. 6-11)(internal citations omitted).

In this case, this Court also finds no justifiable reason to
second guess the trial court, considering the deference to be
given to the state courts, and that the decision of the state
court is not objectively unreasonable in light of the evidence
presented to state courts.  The prosecutor provided a race-

---

[4]   In <u>State v. Gilmore</u>, 103 N.J. 508 (1986), the New Jersey
Supreme Court held that to make a <u>prima</u> <u>facie</u> showing of an
unconstitutional use of peremptory challenges, a defendant "must
establish that the potential jurors wholly or disproportionally
excluded were members of a cognizable group" and that "there is a
substantial likelihood that the peremptory challenges resulting
in the exclusions were based on assumptions about group bias
rather than any indication of situation-specific bias."  <u>State v.</u>
<u>Gilmore</u>, 103 N.J. 508 at 535-36 (1986).

neutral explanation for exercising the peremptory challenges, which the trial court accepted, and which from the record appear to have been genuine.  Additionally, the state courts applied the correct law to Petitioner's claims.  As such, Petitioner has not demonstrated that the actions of the state courts, which applied the proper federal law, "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Accordingly, this ground for a writ of habeas corpus will be denied.

**G.    Remaining Claims**

In Grounds 9 and 10, Petitioner argues that the state court should not have denied his ineffective assistance of counsel claims, and that the state court erred in denying his PCR motion. For the reasons previously expressed in this Opinion, the Court finds these claims without merit.

## CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254 is denied.  The Court further finds that no certificate of appealability will issue because Petitioner has not made a substantial showing of the

26

denial of a constitutional right, as required by 28 U.S.C. §

2253.  An appropriate Order accompanies this Opinion.


                        s/ Stanley R. Chesler
                         STANLEY R. CHESLER
                      United States District Judge